# EXHIBIT "A"

# LOAN AGREEMENT

## PROPERTY ADDRESS: 138 Nobility Ct, Toms River, NJ 08755

### DEFINITIONS

In addition to the capitalized terms defined where used, words used in multiple sections of this Loan Agreement (this "Agreement") and/or the corresponding Loan Documents (as hereinafter defined) are defined below.

(A) "**Borrower**" is 138 NOBILITY LLC, a New Jersey limited liability company. Borrower is the mortgagor under the Security Instrument(s) (as hereinafter defined).

(B) "**Environmental Law**" shall mean any present and future federal, State and local laws, statutes, ordinances, rules, regulations, standards, policies and other governmental directives or requirements, as well as common law, relating to the protection of human health or the environment, Hazardous Materials, liability for, or costs of, other actual or threatened danger to human health or the environment.

(C) "**Governmental Authority**" shall mean any court, board, agency, commission, office, central bank or other authority of any nature whatsoever for any governmental unit (federal, State, county, district, municipal, city, country or otherwise) or quasi-governmental unit whether now or hereafter in existence.

(D) "**Hazardous Materials**" shall mean but is not limited to any and all substances (whether solid, liquid or gas) defined, listed, or otherwise classified as pollutants, hazardous wastes, hazardous substances, hazardous materials, extremely hazardous wastes, or words of similar meaning or regulatory effect under any present or future Environmental Laws, or that may have a negative impact on human health or the environment, including but not limited to Mold, petroleum and petroleum products, asbestos and asbestos-containing materials, polychlorinated biphenyls, lead, radon, radioactive materials, flammables and explosives, but excluding substances of kinds and in amounts ordinarily and customarily used or stored in similar properties for the purposes of cleaning or other maintenance or operations and otherwise in compliance with all Environmental Laws.

(E) "**Lender**" is 703 FUNDING A LLC, a New York limited liability company, its successors and assigns. Lender's address is 209 2nd St, Lakewood, NJ 08701. Lender is the mortgagee under the Security Instrument(s).

(F) "**Loan**" means the debt evidenced by the Note (as hereinafter defined), plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument(s).

(G) "**Loan Documents**" means collectively this Loan Agreement, the Note, the Security Instrument(s) and all other documents executed and/or delivered in connection with the Loan.

(H) **"Mold"** shall mean fungi or bacterial matter which reproduces through the release of spores or the splitting of cells, including, but not limited to, mold, mildew, and viruses, whether or not such Mold is living.

(I) **"Note"** means the promissory note signed by Borrower and dated August 1, 2019. The Note states that Borrower owes Lender Four Hundred Twenty Seven Thousand and 0/100 Dollars (U.S. $427,000.00) and any additional amounts advanced pursuant to this Agreement and the other Loan Documents, plus interest. Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than September 1, 2020 (the "**Maturity Date**").

(J) **"Property"** means the real property described in Exhibit A of the Security Instrument(s), and includes any improvements thereon.

## AGREEMENT

This is a Loan Agreement dated August 1, 2019 containing the terms that apply to your lending relationship ("Account") with 703 FUNDING A LLC, a New York limited liability company. The words "we", "lender" or "us" refer to the lender named in the previous sentence, together with its successors and assigns. The words "you" or "your" mean the person or persons who use or authorize the use of the Account, jointly and severally. "You," "borrower" and "your" include your affiliates who give us security instruments to secure loans we make to or for such affiliates. The terms of this Agreement preceded by a "[ ]" are part of this Agreement only if the box is checked. This Agreement applies and binds you and us as to all extensions of credit we make to you or your affiliates on or after the date of this Agreement.

1. **Loans We Will Consider.** The following are the types of extensions of credit covered by this Agreement (checked as applicable):

[X] A. <u>Property You Already Own.</u> We may extend credit to you secured by the Property you own. We will ask that you submit information to enable us to determine if your request for a loan meets our underwriting requirements. After you submit all information that we request, we will notify you how much we are prepared to lend, pricing and conditions. If you accept, we will ask you to sign a promissory note, security instrument and other loan documents on the Property in favor of us.

[] B. <u>New Acquisitions.</u> We may extend credit to you secured by the Property you wish to acquire. We will ask that you submit information to enable us to determine if your request for a loan meets our underwriting requirements. After you submit all information that we request, we will notify you how much we are prepared to lend, pricing and conditions. If you accept, we will ask you to sign a promissory note, security instrument and other loan documents on the Property in favor of us.

2. **Cross-Default.** You agree that if you default under any promissory note or security instrument you give us, we may consider and declare you to be in default under all unpaid notes and security instruments you have given us.

3. **Application of Payment.** We will determine the method of applying your payments and credits to the loans in your Account.

4. **Security.** All of your loans will be secured by security instruments on your real property collateral and improvements, as evidenced by mortgages (the "Security Instrument(s)"). Each Security Instrument allows us to declare a default if you sell or transfer your Property without our prior written consent. Provided you are not in default under this Agreement, we will reconvey any Security Instrument for an amount equal to all sums due on your Account.

5. **Transfer of Account.** You cannot transfer or assign your Account to any other person.

6. **Change of Address.** You agree to advise us promptly if you change your mailing address. All written notices and statements from us to you will be considered given when placed in the United States mail, postage prepaid, and addressed to you at your current address as it appears in our records.

7. **Irregular Payments.** We may accept late payments or partial payments or checks, drafts or money orders marked "Payment in Full" without losing any of our rights under this Agreement.

8. **Amendments.** We may make insignificant changes to this Agreement at any time or changes that unquestionably benefit you, as long as we give you advance written notice as required by law.

9. **Cancellation.** You can cancel your Account at any time by giving us notice and paying in full all sums due on your loans. Your obligation under this Agreement, including our security interest in your Property, and any changes made under this Agreement prior to cancellation will continue to apply until you have paid you all the money you owe.

10. **Environmental Representations and Covenants.** You represent and warrant that neither the Borrower nor the Property are in violation of any Environmental Law, or subject to any existing, pending, or threatened investigation or inquiry by any Governmental Authority pertaining to an alleged violation of any Environmental Law.

You shall not cause or permit the Property to be in violation of, or do anything which would subject the Borrower or the Property to any remedial obligations under any Environmental Law, and shall promptly notify the Lender in writing of any existing, pending, or threatened investigation or inquiry by any Governmental Authority in connection with any Environmental Law.

You will not install, suffer, or permit in at under or about the Property any substance deemed hazardous toxic, extremely hazardous or petroleum products by federal or state regulations. If any such materials are found to be present in the Property in violation of Environmental Laws, you agree to remove the same promptly upon discovery at its sole cost and expense in accordance with Environmental Laws.

You shall duly file or cause to be duly filed with all Governmental Authorities having jurisdiction such reports and/or information returns as may be required or appropriate under all Environmental Laws.

If any lien or judgment shall be filed with respect to the Property arising from a violation of Environmental Laws, then you shall, within thirty (30) days from the date that you are given notice of such lien or judgment (or within such shorter period of time if any Governmental Authority has commenced steps to have the Property sold), pay the claim and remove the lien from the Property.

If there shall occur any releasing, spilling, leaking, pumping, pouring, emitting, emptying, or dumping of hazardous materials on, from or affecting the Property, or otherwise in violation of Applicable Environmental Laws, you shall promptly clean it up in accordance with the provisions of all Environmental Laws and to the satisfaction of the Lender.

**11.    Indemnification.** To the full extent allowed by New Jersey and Federal law, as applicable, you hereby promise to defend and timely, fully and immediately indemnify us and to hold us harmless from any liability, fine, fee, cost, expense, legal fees (of counsel chosen by us), judgment or other liability or expense arising from: (a) any real property we have financed, (b) your business activities, (c) any claim, lawsuit, demand or other assertion by a borrower, regulatory agency, or third party in any way connected with your business activities. Borrower shall pay and advance lender's expenses pending the adjudication of the subject of indemnification. Your obligation under this paragraph shall survive the repayment of all loans you obtain from us.

**12.    Loan Repurchase.** Within ten (10) days of our written demand, you shall fully repay all amounts owed to us as to any real property, including without limitation, the Property, that is the subject of an indemnification claim as defined in paragraph 10. Your failure to do so shall be an event of default under all loans outstanding between you and us. Any amount that is not paid when due shall bear interest at the rates set forth in the promissory note for the applicable loan or loans. You shall immediately notify us of any claim that is made or threatened by any borrower, regulatory agency or third party in connection with any real property, including without limitation, the Property, we have financed.

**13.    Other Provisions.** Each of you who signed this Agreement or use the Account is individually and jointly obligated for all payments due under this Agreement. The Account has been applied for, considered, approved and issued in New Jersey and all extensions of credit are being made from New Jersey. If any part of this Agreement is not valid, all other parts will remain enforceable.

**14.    Business Credit.** You hereby confirm your representation to us that no loans under this Agreement are intended to be used or shall be used for other than business and/or commercial (non-consumer) purposes. You agree that (1) Borrower, (2) any affiliate of Borrower, (3) Guarantor (as defined in Section 8 of the Note), (4) any holder of a direct or indirect equity interest in Borrower or any such affiliate, (5) any officer, director, executive employee or manager of any

person or entity described in the foregoing clauses (1) — (4) or (6) any family member (including spouse, siblings, ancestors and lineal descendants) of any person or entity described in the foregoing clauses (1) — (5) shall not occupy any real property, including without limitation, the Property, securing any loan we make to you. You may have employees, security personnel and other persons temporarily occupy such property for the purposes of securing it, but no one shall occupy the Property as their principal residence or second home while you own it.

15. **Financial Data.** Not more often than annually, you shall provide to us on our request a copy of your federal income tax returns, balance sheet, profit and loss, as applicable for the prior tax year.

16. **Credit Authorization.** You hereby provide a continuing authorizing to us to obtain credit reports on your credit. In addition, a photocopy of this Agreement shall constitute your irrevocable authorization and direction to any bank at which you have an account to provide copies of your bank statements, cancelled checks and deposits slips on all accounts you have at that bank.

17. **Loan Extension.** In our absolute discretion we may allow you to extend your loan in up to two (2) three (3) month increments if you request it. If we are inclined to grant an extension, we will notify you. In the absence of such notice you should assume your loan is due on the Maturity Date set forth in your Note. We are very unlikely to consider an extension if:

> You have at any time defaulted under the Note, the Security Instrument or any other Loan Document in the payment of principal, interest, taxes, insurance premiums, loan costs, and or you have been consistently late in the making of such payments, or fees, and or in the performance of the terms, conditions, and covenants of the Note, Security Instrument and any other Loan Document.

If we extend your loan we will charge you a loan extension fee equal to 1.00% of the original principal balance of the Loan per extension period, for the negotiation and arrangement of the loan extension. You must also execute a Loan Modification Agreement on our form. As a condition of extension, we may ask you to prepay interest for the entire period of the extension.

18. **Cooperation.** Borrower acknowledges that Lender and its successors and assigns may, in connection with a "securitized transaction" without notice to or consent from Borrower (a) sell this Agreement, the Security Instrument(s), the Note, the other Loan Documents, and any and all servicing rights thereto to one or more investors as a whole loan, (b) participate the Loan to one or more investors, (c) deposit this Agreement, the Note and the other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets, or (d) otherwise sell the Loan or interests therein to investors (the transactions referred to in clauses (a) through (d) are hereinafter each referred to as a "Secondary Market Transaction"). Borrower shall cooperate with Lender in effecting any such Secondary Market Transaction and shall cooperate to implement all reasonable requirements imposed by any rating agency involved in any Secondary Market Transaction so long as the same does not have a material adverse impact on the operations, use or value of any Property or Borrower. Borrower shall provide such information and documents relating to any Borrower and any Property as Lender may reasonably request in connection with such Secondary Market Transaction, provided such information shall

not be more expansive (other than to a de minimis degree) than the information provided to Lender in connection with the closing of the Loan. In addition, Borrower shall make available to Lender all information concerning its business and operations that Lender may reasonably request, provided Lender shall make such parties aware of the confidential nature of such information and such parties shall agree to maintain the confidentiality of such information. Lender shall be permitted to share all such information with the investment banking firms, rating agencies, accounting firms, law firms and other third-party advisory firms involved with the Loan and the Loan Documents or the applicable Secondary Market Transaction. It is understood that the information provided by Borrower to Lender may ultimately be incorporated into the offering documents for the Secondary Market Transaction and thus various investors may also see some or all of the information. Lender and all of the aforesaid third-party advisors and professional firms shall be entitled to rely on the information supplied by or on behalf of Borrower. Borrower also agrees to execute any amendment of or supplement to this Agreement and the other Loan Documents as Lender may reasonably request in connection with any Secondary Market Transaction, provided that such amendment or supplement does not change any of the economic terms of the Loan or materially increase Borrower's non-monetary obligations or materially diminish Borrower's rights under this Agreement and the other Loan Documents.

**19.    Choice of Law.** New Jersey law shall govern this Agreement, all promissory notes you give us, all security instruments you give us, all guarantees you provide to us and all other agreements between us as well as all aspects of our business relationship.

**20.    Power of Attorney.** Borrower hereby irrevocably constitutes and appoints Lender and any officer or agent of Lender, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of Borrower or in Borrower's own name to execute in Borrower's name any such documents and otherwise to carry out the purposes of this Agreement, to the extent that Borrower fails or refuses to promptly execute such documents. To the extent permitted by law, Borrower hereby ratifies all acts said attorneys-in-fact have lawfully done in the past or shall lawfully do or cause to be done in the future by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

**21.    Severability.** Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid pursuant to applicable law, but if any provision of this Agreement shall be prohibited by or invalid pursuant to applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

**22.    Patriot Act.** The USA Patriot Act of 2001 (Public Law 107-56) and federal regulations issued with respect thereto require all financial institutions to obtain, verify and record certain information that identifies individuals or business entities which open an "account" with such financial institution. Consequently, we may from time-to-time request, and you shall provide to us, your name, address, tax identification number and/or such other identification information as shall be necessary for us to comply with federal law.

**23.    Intentionally Omitted.**

[SIGNATURE PAGE FOLLOWS]

By signing below, you agree to all of the above terms and conditions and certify that you have received a completed copy of this Agreement.

**BORROWER:**

138 NOBILITY LLC,
a New Jersey limited liability company

By: _____
Name: Arthur Spitzer
Title: Member


**LENDER:**

703 FUNDING A LLC,
a New York limited liability company

By: _____
Name: Josh Weinfeld
Title: Member